ARKANSAS STATE HIGHWAY COMMISSION *v.* Ray
TOWNSEND and Ray Townsend Farms, Inc.

92-1456                                                      858 S.W.2d 66

Supreme Court of Arkansas
Opinion delivered July 5, 1993

*Robert L. Wilson, Philip N. Gowen* and *Charles Johnson,*

for appellant.

*Carl Madsen*, for appellees.

ROBERT L. BROWN, Justice. The appellant, Arkansas State Highway Commission, appeals from a chancery court decision enjoining it from removing certain structures from a highway right-of-way. The Commission bases its appeal on several grounds, including a state statute which prohibits physical encroachments on rights-of-way. We agree with the Commission that the statute decides the matter in its favor, and we reverse the chancery court's decision and dismiss.

On November 3, 1930, the Monroe County Judge issued an order granting the Commission's petition to enlarge the right-of-way to 250 feet on either side of the center line of the "Roe to Clarendon Road," now Highway 79. The order was based on "public interests and the economical construction, improvement and maintenance" of the road. Landowners feeling aggrieved or damaged by the order were directed to file a claim with the county judge or be forever barred. The right-of-way granted was an easement and not fee simple title. The appellees, Ray Townsend and Ray Townsend Farms, Inc. ("Townsend"), at all times relevant to the appeal owned the servient estate involved in this dispute in fee simple. Located on the Townsend property which is subject to the highway right-of-way are a gate, a fence, and two cabins. In recent years, Townsend began the practice of charging sports enthusiasts $1.00 to enter his property and hunt or fish and an additional $1.00 to use his boats on a lake on his property.

The Commission filed a petition on April 1, 1992, seeking to enjoin Townsend from continuing to maintain the gate, fence, and cabins on the right-of-way and requesting an order directing Townsend to remove the structures. An ex parte decree was granted on April 7, 1992, ordering Townsend to remove all of the property in dispute.

Thereafter, Townsend moved to dismiss the petition on the merits and to set aside the ex parte decree. By order entered on May 26, 1992, the chancery court granted the motion to set aside the decree and scheduled the matter for trial.

A hearing was held on June 16, 1992. In a letter opinion, following the hearing, the court determined that because the

taking in this instance was not in fee, the Commission was vested with something less than predominant control. The court said:

> When a right-of-way such as the one in question is granted, the owner of the servient estate is not left at the mercy of the state. Every incident of ownership not in conflict with the right-of-way is reserved to the servient tenement. The holder of the right-of-way is not permitted to roam at will over the property of the landowner but is held to a reasonable use upon a practical route for the exclusive purpose for which the right-of-way exists.

The court found that the structures on the right-of-way had existed for approximately 60 years and that the Commission had acquiesced to their presence until "recent prodding from sportsmen." The court also observed that the Commission had simply failed to demonstrate that these structures interfered with its right to use this property for state highway purposes. It further found that the gate had been removed in the past and rebuilt by the Commission and that the purpose of the gate and fence was to protect Townsend's property from trespassers.

On August 18, 1992, the chancery court entered an order finding that the right-of-way extended 250 feet on either side of the centerline of Highway 79 and that, concerning the alleged encroachments on the right-of-way, there had been a tacit agreement for many years between the Commission and Townsend to permit the structures now at issue. The Commission's prayer for a mandatory injunction requiring removal of the structures was denied. The Commission then moved for a new trial, but that motion, too, was denied.

For its central issue on appeal, the Commission argues that the chancery court's finding that Townsend has the right to maintain his structures within the right-of-way so long as they do not interfere with the maintenance of or construction on Highway 79 is inconsistent with the governing statute. We agree. The police powers of the state are clearly set out by statute, which reads in part:

> (a) The rights-of-way provided for all state highways shall be held inviolate for state highway purposes, except as provided in subsections (b) and (c). No physical or functional encroachments, installations, signs other than

traffic signs or signals, posters, billboards, roadside stands, gasoline pumps, or other structures or uses shall be permitted within the right-of-way limits of state highways.

Ark. Code Ann. § 27-67-304(a) (1987). "State highway purposes" are defined with some specificity at Ark. Code Ann. § 27-67-302 (1987). Those purposes include "protection of the state highway system from both physical and functional encroachments *of any kind*." (Emphasis ours.) There is no question but that the structures involved in this case are encroachments on the right-of-way.

Townsend urges, however, that only encroachments that interfere with maintenance, operation, or construction of the highway are foreclosed. According to this theory, other encroachments not so interfering are permissible. We have previously observed, however, that there is no such thing as an authorized, reasonable, and necessary encroachment on a highway right-of-way. *Buffalo* v. *Arkansas State Highway Commission*, 248 Ark. 406, 451 S.W.2d 737 (1970). Moreover, the language of Ark. Code Ann. § 27-67-304(a) (1987) is clear and precise in its declaration that "No physical or functional encroachments . . . shall be permitted within the right-of-way limits of state highways."

The gate, fence, and cabins on the right-of-way violated the terms of the statute which are broad and unambiguous. The General Assembly drew no distinction in § 27-67-304(a) between degrees or types of encroachments. Nor did it differentiate between a right-of-way granted by easement or one held in fee simple. According to that statue, rights-of-way in general are inviolate and to be free from physical encroachments of any kind. We decline to superimpose on the statute a distinction based on how the right-of-way was first granted or on the kind of encroachment involved. The Commission was well within its rights to petition to clear the right-of-way in this case.

Nor do we believe that acquiescence by the Commission in allowing these structures to remain on the right-of-way for a considerable period of time is a persuasive reason to allow the encroachments to continue. Here, representatives of the state were aware of the encroachments in the right-of-way. Indeed, there was evidence that a Commission employee had a key to the

Townsend gate. Nevertheless, as already discussed, § 27-67-304(a) specifically prohibited such encroachments. In the face of this express proscription by the General Assembly, the Commission employees had no authority to engage in conduct to countermand a statutory directive and commit the state to encroachments in the right-of-way. Unauthorized acts by state employees under such circumstances will not result in estoppel against the state. We have specifically held that a sovereign is not bound by the unauthorized acts of its employees. *Miller* v. *City of Lake City*, 302 Ark. 270, 789 S.W.2d 440 (1990); *Hankins* v. *City of Pine Bluff*, 217 Ark. 226, 229 S.W.2d 231 (1950). The chancery court, accordingly, was in error in finding that the Commission was estopped by the conduct of its representatives.

Reversed and dismissed.